**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| BRIAN K. BORGERSON,<br><br>Plaintiff,<br><br>vs.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | CASE NO. 3:20-CV-01820-JGC<br><br>JUDGE JAMES G. CARR<br><br>MAGISTRATE JUDGE DARRELL A. CLAY<br><br>**REPORT AND RECOMMENDATION** |

## INTRODUCTION

Plaintiff Brian K. Borgerson filed a Complaint against the Commissioner of Social Security ("Commissioner") seeking judicial review of the Commissioner's decision denying disability insurance benefits ("DIB"). (ECF #1). This Court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). On August 18, 2020, pursuant to Local Rule 72.2, this matter was referred to a Magistrate Judge for preparation of a report and recommendation, and was subsequently reassigned to me pursuant to General Order 2021-06. (Non-document entry dated May 26, 2021). Following review, and for the reasons stated below, I recommend the Court **AFFIRM** the Commissioner's decision.

## PROCEDURAL BACKGROUND

Mr. Borgerson filed for DIB on June 27, 2016, alleging a disability onset date of March 5, 2015. (Tr. 136-37). His claims were denied initially and on reconsideration. (Tr. 136-66). Mr. Borgerson received an unfavorable decision from the ALJ on June 20, 2018. (*See* Tr. 167-98). On November 29, 2018, the Appeals Counsel granted Mr. Borgerson's request for review, vacated the

June 20, 2018 hearing decision, and remanded the case to an ALJ for resolution of issues including further RFC explanation, rationale regarding new and material evidence as to Mr. Borgerson's torn meniscus, and clarification of limitations suggested by State agency psychologist reports. (Tr. 199-202).

After remand, Mr. Borgerson (represented by counsel), and a vocational expert ("VE") testified at a hearing before the ALJ on July 18, 2019. (Tr. 36-65). In an August 22, 2019 written decision, the ALJ found Mr. Borgerson was not disabled. (Tr. 12-35). The Appeals Council denied Mr. Borgerson's request for review, making the hearing decision the final decision of the Commissioner. (Tr. 1-6; *see* 20 C.F.R. §§ 404.955 & 404.981). On August 17, 2020, Mr. Borgerson timely filed this action (ECF #1), which relates only to the ALJ's 2019 decision subsequent to and in accordance with the November 2018 instructions of the Appeals Council.

## FACTUAL BACKGROUND

### I. ADMINISTRATIVE HEARING

Mr. Borgerson (represented by counsel) and a VE testified before the ALJ on July 18, 2019. (Tr. 36-65). After discussion of the Appeals Counsel remand and Mr. Borgerson's claims and impairments, Mr. Borgerson began his testimony. (Tr. 36-44).

Mr. Borgerson testified he has not worked since 2010, and his only source of income is worker's compensation. (Tr. 44-45). Mr. Borgerson related he had fusion surgery at L5-S1, and a lumbar laminectomy the year prior to the hearing. (Tr. 46-47).

Mr. Borgerson has depression and anxiety, first treated in 2014 or 2015. (Tr. 47). He initially reached out to his family doctor requesting a referral for mental health services, and was given a referral to Dr. Valko. (*Id.*). Mr. Borgerson had the referral available for a year before he

eventually saw Dr. Valko in November 2015. (Tr. 53-54). Mr. Borgerson described having symptoms of depression and anxiety, including panic attacks, for two years before his first appointment with Dr. Valko. (Tr. 54, 56). During the relevant period, Mr. Borgerson described his symptoms as "crying a lot" and a feeling that "something bad was really going to happen." (*Id.*). The crying spells would occur once every 10 to 14 days, and sometimes would last most of the day. (Tr. 48-49). Mr. Borgerson also testified to difficulty with his memory and concentration, issues getting along with others, and short-temperedness. (Tr. 48). Mr. Borgerson has attempted numerous medications, but is still unable to control his mental health symptoms. (Tr. 47-48).

Mr. Borgerson testified to his back pain, which still remains, although it has improved somewhat since the relevant time period. (Tr. 49-50). While on a delivery route, Mr. Borgerson hurt his back while pulling a beer keg upstairs. (Tr. 50). He has extreme low back pain radiating down both legs, but concentrated on the left side. (Tr. 49). Mr. Borgerson is unable to walk more than 10 minutes before needing to sit and rest. (*Id.*). His legs throbbed and ached during the relevant period, but these symptoms have improved since his surgery in 2018. (Tr. 50). However, these symptoms still return and increase as the day goes on. (*Id.*). Mr. Borgerson testified that during the relevant time period, he was unable to bend at his waist to pick an item off the floor. (Tr. 50-51). He is still unable to bend at the waist, but can now pick items off the floor by kneeling rather than bending. (*Id.*). Mr. Borgerson described being unable to sit for periods longer than 10 minutes before needing to get up and move around. (Tr. 52).

Mr. Borgerson has a torn meniscus in his right knee. (Tr. 52-53). He has yet to undergo surgery to repair the tear. (*Id.*).

The VE then testified. The ALJ indicated Mr. Borgerson could no longer do his past relevant work as a truck driver, and posed a hypothetical. (Tr. 58-59).

> Assume a hypothetical individual with the same age, education and vocational profile as the claimant with the residual functional capacity to perform light work except he can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl. He should never climb ladders, ropes, or scaffolds. He should avoid workplace hazards such as unprotected heights and moving mechanical parts. He is permitted to alternate between sitting and standing every 30 minutes, for one to two minutes, in the immediate vicinity of the workstation. And he is limited to simple tasks in a routine work setting, but not at a production rate pace. For example, no assembly line work. He is limited to few changes in the workplace, and such changes should be introduced slowly. He is limited to occasional interaction with supervisors, co-workers, and the general public. . . . And he is limited to work within the levels of SVP 1 and SVP 4.

(Tr. 59).[1] The VE responded that such an individual would not be able to perform Mr. Borgerson's past relevant work as actually or generally performed. (Tr. 59-60). However, the VE identified other jobs available in the national economy:

- Photocopying machine operator (DOT[2] 207.685-014): SVP 2, light, 50,000 jobs available in the national economy.
- Mail room clerk (DOT 209.687-026): SVP 2, light, 40,000 jobs available in the national economy.
- Office helper (DOT 239.567-010): SVP 2, light, 40,000 jobs available in the national economy.

(Tr. 60).

---

[1] "SVP" stands for "Specific Vocational Preparation" and refers to the amount of time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance of a job. *Kyle v. Comm'r Of Soc. Sec.*, 609 F.3d 847, 851 n.6 (6th Cir. 2010).

[2] "DOT" stands for the *Dictionary of Occupational Titles*, published by the Department of Labor. 20 C.F.R. § 404.1566(d).

The ALJ then modified the first hypothetical to include a restriction to sedentary work. (Tr. 61). In response, the VE testified that the available jobs would be limited, but such an individual would still be able to find work in the national economy. (*Id.*). For example:

- Document preparer, microfilming (DOT 249.587-018): SVP 2, light, 20,000 jobs available in the national economy.[3]
- Lens inserter (DOT 713.687-026): SVP 2, sedentary, 14,000 jobs available in the national economy.
- Final assembler, optical goods (DOT 713.687-018): SVP 2, sedentary, 4,000 jobs available in the national economy.

(Tr. 61-62).

The ALJ then asked if an individual would be able to maintain work if he were off task more than 20 percent of the workday. (Tr. 62). The VE testified that no competitive jobs in the national economy would be available for that hypothetical individual. (*Id.*). Employers generally require an employee to be on task 95 percent of the time or better, excluding regular breaks and lunch. (*Id.*). Employers only tolerate an unscheduled absence every other month, no more than six per year. (Tr. 62-63).

The VE testified that no jobs would be available for an individual who needs to be in a reclined position with feet raised one to two feet throughout the workday. (Tr. 63-64).

In response to the ALJ's inquiry, the VE confirmed his testimony was based on agency publications and his professional experience; his testimony was not in conflict with the DOT or the SCO (Selected Characteristics of Occupations). (Tr. 63).

[3] I note that the DOT actually provides that this occupation is sedentary, not light.

## II. Personal and Vocational Evidence

Mr. Borgerson was 47 years old on the alleged onset date of his disability; he was therefore defined as a younger individual age 18-49. (Tr. 136; *see also* 20 C.F.R. §§ 404.1563). Mr. Borgerson had past relevant work as a delivery truck driver; this work was "substantial gainful activity" under the Act, was performed long enough for Mr. Borgerson to achieve average performance, and was performed within the relevant period. (Tr. 24; *see also* 20 C.F.R. § 404.1565). But, given his residual functional capacity ("RFC"), Mr. Borgerson's past relevant work could no longer be performed. (Tr. 24). Accordingly, Mr. Borgerson was unable to perform past relevant work. (*Id.*).

## III. Relevant Medical Evidence[4]

**Back Pain.** While working as a delivery truck driver in 2004, Mr. Borgerson initially injured his back. (Tr. 46, 597). He continued to work until 2009, when he injured his back again and could not continue working. (Tr. 90). Mr. Borgerson describes his pain as dull and nagging, radiating from his low back into both legs, but greater in the left than in the right. (*See, e.g.*, Tr. 731).

Mr. Borgerson received treatment for his back pain and medication management from James Bassett, M.D., at Comprehensive Centers for Pain Management. (Tr. 731-65). Mr.

---

[4] On March 4, 2015, an ALJ issued an unfavorable decision denying Mr. Borgerson's claim for the period from January 13, 2009 through March 4, 2015. (Tr. 106-31). The Appeals Council denied his request for review, making the ALJ's decision final and binding for the time period through March 4, 2015. (Tr. 132-34). Because Mr. Borgerson's date last insured was September 30, 2015, he must prove his alleged disability began on or before that date. *See* 20 C.F.R. § 404.131. Therefore, the relevant period in Mr. Borgerson's case is from March 5, 2015 through September 30, 2015. (Tr 18).

In this case, the ALJ gave no weight to opinions dated outside of the relevant time period. (Tr. 24). Therefore, I summarize only the records from within the relevant time period.

Borgerson reported the medications improved his function and quality of life, and he was able to continue his activities of daily living. (Tr. 736-37, 743-44, 750, 754, 762).

Treatment notes from March 19, 2015 indicate Mr. Borgerson's pain was at a six out of ten. (Tr. 761). Mr. Borgerson reported his medications made his pain manageable and he was able to improve his quality of life, but he was unable to work or engage in recreational activities. (Tr. 761-62). Mr. Borgerson's movement was restricted in all directions, although his knees, hips, and ankles were stable and his muscle strength was rated at 5/5. (Tr. 763-64). His gait was intact and he did not require the use of mobility aids. (Tr. 764).

Treatment notes from April 16, 2015 document positive straight leg tests bilaterally, which are indicative of back pain. (Tr. 751). Dr. Bassett continued Mr. Borgerson's prescriptions of OxyContin, Nucynta, and baclofen, and re-requested authorization for caudal epidural steroid injections. (Tr. 752).

An MRI from June 18, 2015 indicated multilevel degenerative disc disease and postsurgical changes at L5-S1, causing moderate to severe canal stenosis at L3-L4. (Tr. 735). The MRI also indicated an annular tear and edema at L4-L5. (Tr. 737). Dr. Bassett continued Mr. Borgerson on OxyContin, Nucynta, baclofen, and amitriptyline to manage his pain, and requested authorization for caudal epidural steroid injections. (*Id.*).

Treatment notes dated July 29, 2015 indicate Mr. Borgerson's pain was exacerbated by bending over, sitting, standing, or walking too long, twisting, or with exertion. (Tr. 731). Mr. Borgerson reported he was able to manage his back pain through medication, rest, his TENS unit, and ice. (*Id.*). Dr. Bassett again attempted authorization for caudal epidural steroid injections, but

the Bureau of Worker's Compensation and Mr. Borgerson's insurer denied the claim. (Tr. 731, 727).

**Chiropractic Care.** Mr. Borgerson visited a chiropractor on March 16, 2015. (Tr. 580-82). Intake notes indicate decreased lumbar and cervical range of motion, paresthesia in both legs, and an antalgic posture. (Tr. 581). Attempted treatment through chiropractic care increased Mr. Borgerson's pain. (Tr. 751, 755). After the chiropractic visit, Mr. Borgerson reported to Dr. Bassett that he was performing a job search, requiring extended periods of sitting at a computer and exacerbating his back pain. (Tr. 753). Dr. Bassett stopped the job search for two weeks to allow the back pain to resolve. (Tr. 755).

**Mental Health.** Mr. Borgerson did not have any mental health treatment until after the relevant period. (*See* Tr. 23). He did not begin treating with Tim R. Valko, M.D., until November 19, 2015. (Tr. 53-54, 916-918). Although Dr. Valko affirmed Mr. Borgerson's diagnosis of major depressive disorder, panic disorder, and unspecified anxiety disorder (Tr. 916-18), State agency psychologists did not give this opinion weight, as it was not given until August 2, 2016 – nearly a year after Mr. Borgerson's date last insured. (Tr. 144-45). The ALJ accommodated Mr. Borgerson's mental health diagnoses based on the recommendation of the state agency psychologists, but did not rely on evidence provided by Dr. Valko's office. (*See* Tr. 23-24).

Bradley J. Lewis, M.D., and Joseph Edwards, Ph.D., reviewed Mr. Borgerson's file at the initial level, including medical opinion evidence from Dr. Valko. (Tr. 136-49). In Dr. Edwards's opinion, Mr. Borgerson's clinical profile suggests he is in a good deal of psychological distress and experiencing intense feelings of self-doubt, low morale, and psychological difficulties. (Tr. 143). Dr. Lewis noted that Mr. Borgerson's psychological symptoms were severe prior to his date last insured

and interfered with Mr. Borgerson's ability to concentrate and manage stress. (Tr. 149). However, he determined Mr. Borgerson still able to understand and follow simple directions and make routine work-related decisions. (*Id.*). Mr. Borgerson denied anxiety, depression, sleep disturbance, and irritability in March 2015, March 2016, May 2016, and June 2016, and had no formal mental health treatment from onset of disability in March 2015 through date last insured in September 2015. (Tr. 141, 143).

At the reconsideration level, Elizabeth Das, M.D., and Jennifer Swain, Psy.D., reviewed his file and found Mr. Borgerson's psychological symptoms were severe and interfered with his ability to concentrate and persist in tasks. (Tr. 151-164). However, they determined Mr. Borgerson remained able to understand simple directions and make routine work-related decisions despite these severe impairments. (Tr. 164).

**THE ALJ'S DECISION**

The ALJ's August 22, 2019 decision included the following findings of fact and conclusions of law:

1. The claimant last met the insured status requirements of the Social Security Act on September 30, 2015.

2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of March 5, 2015 through his date last insured of September 30, 2015 (20 CFR 404.1571 *et seq.*).

3. Through the date last insured, the claimant had the following severe impairments: lumbar sprain and degenerative disc disease status post fusion surgery, torn meniscus right knee, anxiety, depression (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except: he can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. He should never climb ladders, ropes, or scaffolds. He should avoid workplace hazards such as unprotected heights and moving mechanical parts. He is permitted to alternate between sitting and standing every 30 minutes, for one to two minutes, in the immediate vicinity of the work-station, and he is limited to simple tasks in a routine work setting but not at a production rate pace, for example, no assembly line work. He is limited to few changes in the workplaces, and such changes should be introduced slowly. He is limited to occasional interaction with supervisors, coworkers, and the general public. He is limited to work with the levels SVP 1 through SVP 4.

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on February 28, 1968 and was 47 years old, which is defined as a younger individual age 45-49, on the date last insured (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569a).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from March 5, 2015, the alleged onset date, through September 30, 2015, the date last insured (20 CFR 404.1520(g)).

(Tr. 18-25).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the

correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). In determining whether the Commissioner's findings are supported by substantial evidence, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). This is so because there is a "zone of choice" within which the Commissioner can act, without fear of court interference. *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986) (citing *Baker v. Heckler,* 730 F.2d 1147, 1150 (8th Cir. 1984)).

## STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner

follows a five-step evaluation process—found at 20 C.F.R. § 404.1520—to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters,* 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The ALJ considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is the claimant determined to be disabled. 20 C.F.R. § 404.1520(b)-(f); *see also Walters*, 127 F.3d at 529.

## Discussion

Mr. Borgerson presents four arguments on appeal, as follows:

1. The ALJ failed to adequately address a concern raised by the November 29, 2018 Appeals Council Order regarding the State agency psychology reports, resulting in an unfavorable decision.

2. The ALJ failed to follow Social Security's regulations by issuing a residual functional capacity that is internally inconsistent.

3. The ALJ erred by refusing to consider medical evidence after the date last insured of September 30, 2015.

4. Jobs testified to by the VE and adopted by the ALJ in her decision are not in sufficient numbers in the national economy and therefore cannot be a basis to deny Plaintiff's application for DIB.

(Pl.'s Br., ECF #13, PageID 1892-96). In response, the Commissioner states that substantial evidence supports the ALJ's RFC; the ALJ complied with the Appeals Council's Order, properly determined Mr. Borgerson's RFC, and properly considered the medical evidence available after the date last insured; and the jobs the VE identified existed in significant numbers in the national economy and the ALJ did not err in her Step Five finding. (Comm'r's Br., ECF #14, PageID 1907-19). I address each issue in turn below.

**I. The ALJ responded appropriately to the November 29, 2018 Appeals Council Order.**

Mr. Borgerson raises error with the ALJ's evaluation of the State agency psychologists' opinions and the manner in which those opinions were incorporated into the RFC (namely, the ALJ did not incorporate all of the mental impairment limitations they suggested), asserting that the ALJ did not resolve the issue in accordance with the Appeals Council's Order. (Pl's Br., ECF #13, PageID 1892-93). The Commissioner responds that the Appeals Council did not direct a certain finding, and the ALJ addressed the concerns as directed. (Comm'r's Br., ECF #14, PageID 1908-11).

Agency regulations state that an ALJ "*shall* take any action that is ordered by the Appeals Council and *may* take any additional action that is not inconsistent with the Appeals Council's remand order." 20 C.F.R. § 404.977(b) (emphasis added). Any further proceedings must substantially comply with the Appeals Council's directions, and any inconsistent proceedings are error. *Wilson v. Comm'r of Soc. Sec.*, 783 F. App'x 489, 497 (6th Cir. 2019). An ALJ's failure to

adhere to a remand order from the Appeals Council can constitute an error reversible in this court, even if it was allowed to stand by a later Appeals Council ruling. *Id.*

On November 29, 2018, the Appeals Council issued the following order on remand:

> The Administrative Law Judge gave great weight to the State agency psychology reports . . . . They found the claimant was moderately limited in maintaining concentration and attention for extended periods, completing a normal workday and workweek without interruption from psychologically based symptoms, and performing at a consistent pace without an unreasonable number and length of breaks. They also found that the claimant may occasionally require flexibility of shifts and breaks due to system fluctuation . . . . None of these limitations were reflected in the residual functional capacity which merely limited the claimant to simple routine work with simple instructions. Further evaluation of this issue is needed.
>
> On remand the Administrative Law Judge will:
>
> Give further consideration to the claimant's maximum residual functional capacity during the evidence of record in support of assessed limitations (Social Security Ruling 96-8p). In so doing, evaluate the nontreating source opinion pursuant to the provisions of 20 CFR 404.1527 and nonexamining source opinion in accordance with the provisions of 20 CFR 404.1527, and explain the weight given to such opinion evidence. As appropriate, the Administrative Law Judge may request the nontreating source to provide additional evidence and/or further clarification of the opinion (20 CFR 404.1520b).

(Tr. 200).

In her August 22, 2019 decision on remand, the ALJ crafted the following RFC:

> the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except: he can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. He should never climb ladders, ropes, or scaffolds. He should avoid workplace hazards such as unprotected heights and moving mechanical parts. He is permitted to alternate between sitting and standing every 30 minutes, for one to two minutes, in the immediate vicinity of the work-station, and he is limited to simple tasks in a routine work setting but not at a production rate pace, for example, no assembly line work. He is limited to few changes in the workplaces, and such changes should be introduced slowly. He is limited to occasional interaction with supervisors, coworkers, and the general public. He is limited to work with the levels SVP 1 through SVP 4.

(Tr. 21). The ALJ explained her reasoning in crafting the RFC, and explained the weight she gave the State agency opinions. (Tr. 23-24). The ALJ gave an overview of the limitations provided by the State doctor, and gave the opinions "some weight," as they were "generally supported by [the] objective record." (Tr. 23). The ALJ stated she incorporated these findings in the RFC by limiting Mr. Borgerson to:

> simple tasks in a routine work setting, but not at a production rate pace, with few changes in the workplaces, [*sic*] where such changes should be introduced slowly. He is limited to occasional interaction with supervisors, coworkers, and the general public. He is limited to work with the levels SVP 1 through SVP 4.

(Tr. 23-24). In her decision, the ALJ further described the reasons she found Mr. Borgerson able to perform work at the designated RFC. (*See* Tr. 21-24).

Although Mr. Borgerson points out inconsistencies between the State agency psychologists' opinions and the resulting RFC (*see* Pl.'s Br., ECF #13, PageID 1892-93), this does not correspond to a failure on the ALJ's part to follow the Appeals Council's remand order. Rather, the Order indicates the discrepancy between the "great weight" given to the State agency psychology reports and an RFC only including "simple routine work with simple instructions." (Tr. 200). The Appeals Council then directed the ALJ to "[g]ive further consideration" to the RFC and "provide rationale with specific references to evidence of record in support of assessed limitations" in accordance with Agency regulations. (*Id.*). The Appeals Council's order did not specify that the ALJ give any particular weight to the State agency psychologists' opinions, only to explain the weight given, nor did the Appeals Council require that the ALJ incorporate all of the limitations described in the reports. (*Id.*).

An ALJ is not required to adopt a state agency psychologist's opinions verbatim, nor is the ALJ required to adopt the limitations described wholesale. *Reeves v. Comm'r of Soc. Sec.*, 618 F.

App'x 267, 275 (6th Cir. 2015). Accordingly, I conclude the ALJ did not err in not incorporating the limitations described in the state agency reports, and thus the decision complies with the Appeals Council's remand order.

**II. Any internal inconsistencies with the RFC are harmless error.**

Next, Mr. Borgerson asserts the ALJ created an RFC that was internally inconsistent by including a limitation to SVP 1-4, because work at SVP 3-4 is semi-skilled work. (Pl.'s Br., ECF #13, PageID 1893-94). Mr. Borgerson further asserts this would be precluded by the mental impairment limitations the ALJ imposed in the RFC. (*Id.*). Finally, Mr. Borgerson argues the inclusion of the sit/stand option would require him to be off-task greater than 5% of the time and would be work-preclusive. (*Id.*).The Commissioner contends that inclusion of SVPs 3 and 4 in the RFC indicates only the time it takes to learn a job and is therefore not inconsistent with the mental impairment limitations included in the RFC. (Comm'r's Br., ECF #14, PageID 1911-12). The Commissioner further responds that the ALJ presented the VE with a hypothetical including the limitations included in the RFC; because the VE testified there would be jobs available in the national economy including such limitations, the ALJ was properly able to rely on such testimony as substantial evidence supporting the RFC. (*Id.* at 1912-13). I agree with the Commissioner.

SVP refers to the amount of time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance of a job. *Kyle*, 609 F.3d at 851 n.6. The DOT lists an SVP value for each described occupation. An SVP of 1-2 indicates unskilled work, a job that could be learned in a month, and requiring little to no judgment to perform simple tasks. *Kinstler v. Comm'r of Soc. Sec.*, No. 1:18CV0805, 2019 WL 4694218, at *7 n. 4 (N.D. Ohio Sept. 26, 2019) (citing DOT, Appendix C (4th Ed., Rev. 1991));

*see also* 20 C.F.R. § 404.1568; SSR 00-4p. An SVP of 3-4 indicates semi-skilled work, a job that could be learned through training of more than one month and up to six months, and requiring some skills, but does not include complex job functions. *Id.* The DOT is a reference tool and provides the maximum requirements of an occupation as generally performed; it does not provide the range of requirements of a particular job in a specific setting. *Kinstler*, 2019 WL 4694218 at *7; *see also* SSR 00-4p. But a VE's testimony "may be able to provide more specific information about jobs or occupations than the DOT." SSR 00-4p.

The ALJ alone is responsible to form an RFC appropriate to the claimant's abilities, supported by the ALJ's evaluation of the medical evidence. *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004); *see also* 20 C.F.R. § 404.1546(c). The RFC is to be an assessment of the claimant's remaining capacity for work, once the claimant's limitations have been considered. *Id.* at 632. An ALJ may also rely on a VE's testimony in reaching this conclusion, so long as it accounts for the claimant's limitations. *Webb*, 368 F.3d at 633. The ALJ has an affirmative duty to inquire about any conflicts between the VE's testimony and the DOT and has the authority to resolve any conflicts. SSR 00-4p. But the ALJ is not under an obligation to investigate the accuracy of the VE's testimony beyond the mandates contained in SSR 00-4p. *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 606 (6th Cir. 2009).

Only the ALJ has the authority to determine a claimant's medical restrictions and the resulting RFC; the VE does not determine which restrictions the claimant in fact has. *Kessans v. Comm'r of Soc. Sec.*, 768 F. App'x 531, 536 (6th Cir. 2019). Asking a hypothetical of a VE is not a finding and does not bind an ALJ to a VE's response. *Lipanye v. Comm'r of Soc. Sec.*, 802 F. App'x 165, 170 (6th Cir. 2020). Rather, a VE's response to a hypothetical serves as substantial evidence

of the claimant's ability or lack thereof. *Kessans*, 768 F. App'x at 535-36. An ALJ may pose a question regarding a hypothetical individual including several limitations, but later determine the VE's response is not relevant as to the claimant's abilities. *Id.* To require an ALJ to rely on the VE's response to the most restrictive question involving a hypothetical individual would controvert the roles of the ALJ and the VE. *Id.*

Here, the ALJ crafted the following RFC:

> through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except: he can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. He should never climb ladders, ropes, or scaffolds. He should avoid workplace hazards such as unprotected heights and moving mechanical parts. He is permitted to alternate between sitting and standing every 30 minutes, for one to two minutes, in the immediate vicinity of the work-station, and he is limited to simple tasks in a routine work setting but not at a production rate pace, for example, no assembly line work. He is limited to few changes in the workplaces, and such changes should be introduced slowly. He is limited to occasional interaction with supervisors, coworkers, and the general public. He is limited to work with the levels SVP 1 through SVP 4.

(Tr. 21). During the hearing, the ALJ posed the following hypothetical to the VE:

> Assume a hypothetical individual with the same age, education and vocational profile as the claimant with the residual functional capacity to perform light work except he can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl. He should never climb ladders, ropes, or scaffolds. He should avoid workplace hazards such as unprotected heights and moving mechanical parts. He is permitted to alternate between sitting and standing every 30 minutes, for one to two minutes, in the immediate vicinity of the workstation. And he is limited to simple tasks in a routine work setting, but not at a production rate pace. For example, no assembly line work. He is limited to few changes in the workplace, and such changes should be introduced slowly. He is limited to occasional interaction with supervisors, co-workers, and the general public. . . . And he is limited to work within the levels of SVP 1 and SVP 4.

(Tr. 59). The ALJ further modified this first hypothetical from light work to sedentary work. (Tr. 60). And the ALJ inquired as to any conflicts between the DOT and the VE's testimony. (Tr. 63).

The VE was able to identify jobs available in the national economy that fit within the sedentary hypothetical. (Tr. 61-62). And the VE confirmed that his testimony was not in conflict with the DOT. (Tr. 63).

Although the errors Mr. Borgerson raises may be "internally inconsistent," any such alleged error is harmless. Remand would be an "idle and useless formality," *see Hall v. Astrue*, No. 1:09 CV 2514, 2010 WL 5621291, at *14 (N.D. Ohio Dec. 23, 2010), *report and recommendation adopted sub nom. Hall v. Comm'r of Soc. Sec.*, No. 09 CV 2514, 2011 WL 194615 (N.D. Ohio Jan. 20, 2011), because the VE was able to identify jobs in the national economy that fit within the RFC the ALJ created, and the ALJ may rely on the VE's testimony as substantial evidence. The ALJ complied with her duty under SSR 00-4p, posed a hypothetical to the VE that was appropriate to Mr. Borgerson's abilities, and crafted a corresponding RFC. On this issue, I find no error warranting remand.

**III. The ALJ did not err in her consideration of medical evidence dated after the relevant period.**

Finally, Mr. Borgerson alleges the ALJ erred in not giving weight to medical evidence dated after September 30, 2015, specifically pointing to regular treatment he received in the months following the date last insured. (Pl.'s Br., ECF #13, PageID 1894-96). The Commissioner responds that the evidence Mr. Borgerson cites is only minimally probative as to the relevant period and the ALJ was correct to give it no weight. (Comm'r's Br., ECF #14, PageID 1914-16). I agree with the Commissioner.

The claimant bears the burden to establish a disability existing before the expiration of insured status. *Higgs v. Bowen*, 880 F.2d 860, 862-63 (6th Cir. 1988); *see also* 42 U.S.C. § 423(c)(1). If disability occurs after the expiration of insured status, the claim must be denied. *See Higgs*, 880

F.2d at 862-63; *see also Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990). Therefore, only that medical evidence detailing the claimant's condition during the insured time period is relevant when establishing eligibility for DIB. *Forshee v. Comm'r of Soc. Sec.*, No. 11-CV-12339, 2012 WL 1672974, at *8 (E.D. Mich. Apr. 11, 2012), *report and recommendation adopted*, No. CIV. 11-12339, 2012 WL 1676645 (E.D. Mich. May 14, 2012). An ALJ may also rely on medical evidence from outside the relevant time period to establish the existence of an impairment, if that evidence is reasonably proximate in time to the relevant period. *Begley v. Mathews*, 544 F.2d 1345, 1354 (6th Cir. 1976). Medical evidence postdating the expiration of insured status may be considered insofar as it bears on the claimant's condition during the insured period. *Anderson v. Comm'r of Soc. Sec.*, 440 F. Supp. 2d 696, 699 (E.D. Mich. 2006). But even if an ALJ may consider evidence from outside the relevant time period, an ALJ is not required to assign weight to that evidence. The Sixth Circuit makes clear that "an ALJ makes no such procedural error by declining to give any weight to the opinion of a treating source offered *after* the claimant's date last insured when the opinion does not relate back to the insured period." *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 851 (6th Cir. 2020) (emphasis in original).

Here, the ALJ considered all evidence in the record and provided a reasoned explanation for the weight given to the medical opinions in the record. (Tr. 21-24). Where the ALJ determined that evidence was relevant, she incorporated it into the RFC with explanation. (*See* Tr. 23-24) (giving the State doctors' opinions "some weight" and incorporating some of their assessed limitations into the RFC). But where the opinions were after the date last insured, the ALJ did not give them weight. (Tr. 24) ("[o]ther opinions in the record are after the date last insured. . . . As such, they have been given no weight, as they are outside the relevant time period.").

Mr. Borgerson's citations to medical evidence from outside the relevant time period and his assertions as to their relevance are unavailing. I find no reversible error in the ALJ's explanation or handling of medical opinion evidence from after the relevant time period.

**IV. The jobs identified exist in significant numbers in the national economy.**

As his final argument, Mr. Borgerson asserts that the jobs identified by the VE—namely, document preparer, lens inserter, and final assembler—do not exist in significant numbers in the national economy, and the ALJ's analysis of the *Hall* factors was faulty. (Pl.'s Br., ECF #13, PageID 1896-98). The Commissioner responds that there is no "magic number" required to demonstrate whether a significant number of jobs exist in the national, and the ALJ provided sufficient analysis to satisfy *Hall*. (Comm'r's Br., ECF #14, PageID 1916-19). I agree with the Commissioner.

At Step Five of the sequential evaluation process, the burden shifts to the Commissioner to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Walters*, 127 F.3d at 529. At this stage, the ALJ considers the claimant's RFC, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Further, the work in the national economy identified must exist in "significant numbers," either in the region where the claimant lives, or in several regions of the country. 42 U.S.C. § 423(d)(2)(A). Isolated jobs existing only in very limited numbers or in few locations outside of the region where the claimant lives are not considered "work which exists in the national economy." 20 C.F.R. § 404.1566(b).

In *Hall v. Bowen*, the Sixth Circuit outlined the criteria an ALJ should consider when determining whether work exists in significant numbers. 837 F.2d 272 (6th Cir. 1988). That

opinion made clear it was not presenting a boundary or determining what is or is not a significant number of jobs. *Id.* at 275. Rather, *Hall* identified several factors, stating:

> A judge *should* consider many criteria in determining whether work exists in significant numbers, *some of which might include*: the level of claimant's disability; the reliability of the vocational expert's testimony; the reliability of the claimant's testimony; the distance claimant is capable of travelling to engage in the assigned work; the isolated nature of the jobs; the types and availability of such work, *and so on*.

*Id.* (emphasis added). The factors outlined in *Hall* are suggestions for ALJs to follow as guided by their common sense. *Id.* These factors are not requirements, nor do they establish a *per se* rule. *Harmon v. Apfel*, 168 F.3d 289, 292 (6th Cir. 1999). As such, the ALJ is not required to give explicit consideration to each factor. *Id.*

Here, the ALJ identified three jobs that Mr. Borgerson could perform, as supported by the VE's testimony: Document preparer (DOT 249.587-018), 20,000 jobs available in the national economy; lens inserter (DOT 713.687-026), 14,000 jobs available in the national economy; and final assembler (DOT 713.687-018), 4,000 jobs available in the national economy. (Tr. 25, 61-62). In her decision, the ALJ considered the level of Mr. Borgerson's disability, the reliability of the testimony from both Mr. Borgerson and the VE, and the types and availability of work in the national economy. (Tr. 18-25).

All told, the ALJ identified 38,000 jobs available in the national economy that Mr. Borgerson could perform consistent with his RFC. (Tr. 18). Cases within the Sixth Circuit have found that substantial evidence supports ALJs identifying far fewer jobs. *See, e.g.*, *Hall*, 837 F.2d at 275 (1,350 jobs); *Born v. Sec'y of Health & Human Servs.*, 882 F.2d 1474, 1478-79 (2,500 jobs); *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 578 (6th Cir. 2009) (4,800 jobs); *Ashley v. Colvin,* No. 5:15 CV 921, 2016 WL 7187449, at *4 (N.D. Ohio Nov. 16, 2016), *report and recommendation adopted*

*sub nom. Ashley v. Comm'r of Soc. Sec.*, No. 5:15CV921, 2016 WL 7178730 (N.D. Ohio Dec. 9, 2016) (1,000 jobs). Substantial evidence also supports the ALJ's decision here.

## CONCLUSION AND RECOMMENDATION

Following review of the arguments presented, the record, and the applicable law, I find the Commissioner's decision denying DIB supported by substantial evidence and recommend the decision be **AFFIRMED.**

Dated: December 3, 2021

DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

***ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).**